

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED

MAR 12 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| JODI SILBERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case 1:20-cv-01745** |
| | ) | **Judge Thomas M. Durkin** |
| EUGENE SCALIA, | | **Magistrate Judge Young B. Kim** |
| SECRETARY, | | |
| UNITED STATES DEPARTMENT | ) | |
| OF LABOR, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, JODI SILBERMAN, who for her Complaint against the

Defendant, EUGENE SCALIA, SECRETARY, UNITED STATES DEPARTMENT OF

LABOR, alleges as follows:

**NATURE OF ACTION**

1.      This lawsuit arises under the Americans with Disabilities Act, 42 U.S.C. §12101,

*et. seq.,* and the Rehabilitation Act of 1973, 29 U.S.C. §701, *et. seq.*, for failure to accommodate

and retaliation.

**JURISDICTION**

2.      Federal jurisdiction arises under the provisions of the Americans with Disabilities

Act, 42 U.S.C. §12101 *et. seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §701, *et. seq.*, and

federal question jurisdiction under 28 U.S.C. §1331 and §1343.

**VENUE**

3.      Pursuant to 29 U.S.C. §1391, venue lies in the Northern District of Illinois in that

Plaintiff is a resident in this District, the Defendant (United States Department of Labor's

1

Chicago District Office) is located and engages in work in this District and a substantial part of the alleged events or omissions giving rise to the claims occurred in this District.

4.    Jodi Silberman is a resident of Niles, Illinois County of Cook.

5.    The United States Department of Labor (USDOL), Office of Federal Contract Compliance Programs (OFCCP) holds those who do business with the federal government (contractors and subcontractors) responsible for complying with the legal requirement to take affirmative action and not discriminate on the basis of race, color, sex, sexual orientation, gender identity, religion, national origin, disability, or status as a protected veteran.

6.    Jodi Silberman began employment with the USDOL (OFCCP) as an Equal Opportunity Specialist in the Chicago District Office on March 31, 1997.

7.    On May 1, 2012, Jodi Silberman filed an informal EEO retaliation complaint with the USDOL's Civil Rights Center. On May 22, 2012, Jodi Silberman filed a formal EEO complaint. This complaint was amended. On January 24, 2014, Jodi Silberman filed the complaint with the EEOC. This claim was escalated to federal court.

8.    On June 6, 2012, Jodi Silberman requested assistance with filing for disability retirement and/or worker's compensation. On July 1, 2012, Jodi Silberman requested the following accommodation pending the completion and filing of the paperwork necessary for disability retirement.

That I be allowed to telework.
That I be provided a workplace in room 570.
That Joseph H. Kiefer, Jr. is not to have any direct contact with me.
That no private meetings with District Director Michael Thomas can occur unless Union President Brent Barron is also present. No other Union representative is acceptable for this purpose.

If, I am required to attend an investigative interview.
That I be given 24 hours written notice.
That I be told what the meeting is about.
That I be allowed to have my attorney present.

2

9.    On February 22, 2013, Jodi Silberman was constructively discharged from her position.

## GENERAL FACTUAL ALLEGATIONS

10. In 2006, Plaintiff received a negative annual rating. On five separate occasions Plaintiff asked her first and second line supervisors to simply change the "partially meets" to "meets" rating. It was not done. Instead, Plaintiff was told to file a grievance and then an EEO complaint regarding the rating.

11. That first EEO complaint led to continuous EEO administrative actions, a $17,500 settlement for a false arrest and now a federal court action.

12. The continuous actions resulted from the Defendant's (USDOL) attorneys encouraging litigation and their failure to inform managers/supervisors that "people have to work together" and litigation over an annual rating is counterproductive.

## COUNTS
(1) failure to accommodate and
(2) retaliation for filing EEO complaints.

## COUNT 1
## FAILURE TO ACCOMMODATE

13. Plaintiff is an individual with a disability. Plaintiff's disabilities are as follows: Anxiety; Depression; Glaucoma; Hyperthyroidism; Phobias and Thyroid Eye. Plaintiff had received an accommodation from Defendant since 2006.

14. In November of 2011, Plaintiff was diagnosed with Hyperthyroidism--a stress related illness. Defendant knew of Plaintiff's Hyperthyroidism in 2011.

15. On April 24, 2012, Plaintiff again informed Defendant of her disabilities. Defendant did not engage in the interactive process with Plaintiff.

16. On June 6, 2012, Plaintiff informed Defendant of her recent Glaucoma and Thyroid Eye Disease diagnoses. Plaintiff requested Defendant's assistance in filing for disability retirement and/or worker's compensation. Defendant did not engage in the interactive process with Plaintiff.

17. On June 15, 2012, Plaintiff received disability retirement paperwork. An employee can't receive disability retirement unless an accommodation is first attempted. At that time, Plaintiff was awaiting an insurance approval for an MRI.

18. On July 1, 2012, Plaintiff submitted a written accommodation request.

19. On July 23, 2012, Plaintiff submitted medical documentation for her accommodation.

20. On September 14, 2012, Defendant completed a review of Plaintiff's medical documentation.

3

21. On November 1, 2012, Defendant engaged in the interactive process with Plaintiff.

22. On November 20, 2012, Plaintiff received a reasonable accommodation request determination.

23. Defendant never implemented the accommodation.

24. Plaintiff also requested a reassignment as an accommodation. Defendant never engaged in the interactive process regarding a reassignment. Defendant never reassigned Plaintiff.

25. On February 22, 2013, Plaintiff was constructively discharged from her position.

## COUNT 2
## RETALIATION

26. On March 29, 2012, Defendant advised Plaintiff that she was limited as to whom she may contact regarding her EEO issues/complaints.

27. In April of 2012, Plaintiff received an EEOC scheduling letter regarding one of her EEO complaints. Plaintiff contacted the USDOL to resolve her EEO complaints due to her 2011 diagnosed stress related illness.

28. On April 24, 2012, Plaintiff was subjected to an investigative interview by her second line supervisor, District Director Michael Thomas and Assistant District Director Gregory Smith regarding these emails. Defendant did not bring a single email to the investigative interview.

29. On May 1, 2012, Plaintiff filed an EEO retaliation complaint regarding the April 24, 2012 investigative interview.

30. On June 6, 2012, Plaintiff informed Defendant of her recent disability diagnoses and requested assistance in filing for disability retirement and/or worker's compensation.

31. On June 13, 2012, Defendant (Plaintiff's first line supervisor, Assistant District Director Shelley Gordon and District Director Thomas) meet with three employees of OASAM (USDOL's Human Resource office) including Labor Relations Manager Joseph Kiefer, Labor Relations Specialist Holly Coffey-Flynn to discuss Plaintiff. At this meeting, Defendant planned a second investigative interview. The use of the Federal Protective Service (FPS) was discussed.

32. Labor Relations Manager Kiefer had made comments to District Director Thomas that "Plaintiff likes to litigate". Labor Relations Manager Kiefer's label for Plaintiff was "the problem employee". Labor Relations Manager Kiefer had made threats that he would have Plaintiff removed from federal service. Defendant took no corrective action about the threats.

33. Labor Relations Specialist Coffey-Flynn maintained information on Plaintiff going back to 2007 in a file she labeled "all things relating to Jodi Silberman" file. She also maintained an

electronic email file about Plaintiff titled "Silberman". The collective bargaining agreement (CBA) requires files to be purged yearly.

34. Around this time, District Director Thomas conducted an investigative interview of similarly situated employee, Bernadine Davis. Davis did not have pending EEO complaints against Defendant.

35. Plaintiff and Bernadine Davis worked in room 434. Davis's investigative interview was conducted in a conference room in room 434. Only District Director Thomas and Assistant District Director Smith were present.

36. On June 26, 2012, Plaintiff's second investigative interview was held in a conference room on the seventh floor. Plaintiff's investigative interview had District Director Thomas, Assistant District Directors Gordon and Smith and Labor Relations Manager Kiefer (who invited himself) present.

37. Plaintiff was notified of the investigative interview only two hours before it was to be held. Plaintiff's representative was a GS-5 employee whom she had never met.

38. Before the investigative interview started, Plaintiff stated she was ill and asked to take medical leave. District Director Thomas denied her request. District Director Thomas was aware of Plaintiff's June 6, 2012 need for disability retirement and/or worker's compensation.

39. When Plaintiff arrived at the investigative interview, she tried to sit in a seat at the head of the conference table, nearest the door. Labor Relations Manager Kiefer physically blocked Plaintiff from that seat. In a loud and intimidating voice he ordered Plaintiff to sit in a chair in which he would sit across from her. Assistant District Director Smith, who is six foot three, sat in the chair closest to the door.

40. In District Director Thomas's deposition he states, "I do recall Jodi was wanting to sit in a certain place and he directed her and - - And I don't know how he directed her, but I do recall thinking, Joe, you need to cool it. I mean, I remember thinking I don't want to start this meeting. . . off that way." (Thomas Dep. at 209). District Director Thomas took no corrective action.

41. Labor Relations Manager Kiefer leaned forward towards Plaintiff. His face turned red and he yelled to "not accept Plaintiff's answer." He also screamed that "we control the interview".

42. During the two and a half hour investigative interview, Plaintiff stated no less than five times that she was ill. Defendant ignored these statements.

43. Plaintiff was questioned about her June 6, 2012 email request and asked the same questions as on April 24, 2012. Plaintiff was also questioned about an alleged racial slur Defendant knew she didn't make.

44. On June 27, 2012, Plaintiff reported what occurred on June 26, 2012 to the Federal Protective Service.

5

45. On June 28, 2012, Plaintiff sent a letter via email to Regional Director Bradley Anderson. Plaintiff informed him that the investigative interview was EEO retaliation and harassment and violated the Americans with Disability Act. Regional Director Anderson failed to follow Defendant's EEO/anti-harassment policy and did not report the letter to the Civil Rights Center. He took no corrective action.

46. The June 28, 2012 letter included the following, "Please instruct District Director Thomas and his subordinate managers to put an immediate end to the harassment and retaliation that can only be described as vendetta-like." Regional Director Anderson never spoke to District Director Thomas about Plaintiff's letter.

47. On June 29, 2012 at around 8:30 am, Plaintiff informed District Director Thomas that she had reported what occurred on June 26, 2012 to Regional Director Anderson. Regional Director Anderson delegated any matters related to Plaintiff to District Director Thomas.

48. On June 29, 2012 around 3:00 pm, District Director Thomas placed Plaintiff on indefinite administrative leave. District Director Thomas informed Plaintiff that she could only speak with him or Assistant District Director Gordon while on leave.

49. Plaintiff had to call her doctor over the weekend as her medical conditions that caused her to seek disability retirement were exacerbated by the investigative interview. Her stress and anxiety levels increased and she was unable to eat or sleep. Plaintiff was so distraught that she was not able to take her prescribed medications as required. Plaintiff was fearful that any other EEO retaliation or harassment by the Defendant might require her to be hospitalized or she could lose vision. The effects of this investigative interview on Plaintiff impacted Plaintiff's family as it caused unnecessary stress and anxiety in her home.

50. On July 1, 2012, Plaintiff informed District Director Thomas that she was the victim of harassing and intimidating conduct on June 26, 2012. He took no corrective action.

51. On July 2, 2012, District Director Thomas sent an email out to Plaintiff's co-workers with the subject "Events of Last Week". The email states that he first wanted to acknowledge that the events of last week have been disruptive to the entire office and stressful for many of us. I am sorry that these events occurred....District Director Thomas's July 2, 2012 email resulted in Plaintiff suffering embarrassment and humiliation. She was shunned professionally and personally by her co-workers. It severely damaged her reputation and her co-workers no longer wanted to work with her.

52. On July 12, 2012, District Director Thomas forwarded to Labor Relations a signed employee statement he solicited accusing Plaintiff of making the racial slur she was questioned about on June 26, 2012.

**53. On July 16, 2012, District Director Thomas filed a complaint with the Attorney Registration and Disciplinary Commission (ARDC) against the Plaintiff. The complaint states, "Pursuant to Rule 8.3 of the Illinois Rules of Professional Conduct (2010), I am obligated to submit the following complaint against Illinois attorney Jodi Ellen**

Silberman…".

**54. District Director Thomas's ARDC letter states, "Ms. Silberman has several pending legal matters against the OFCCP. In her lawsuits, she has named the DOL, the OFCCP, and Ms. Patricia Shiu (Director of the OFCCP) as defendants."**

**55. The ARDC subpoenaed Plaintiff on March 4, 2013 to appear for a sworn statement. Plaintiff had to retain attorneys Deane Brown and Karen Conti to represent her before the ARDC. The ARDC closed their review of Plaintiff on June 25, 2013. Plaintiff incurred attorneys' fees of over $6,500.**

56. On September 5, 2012, District Director Thomas demanded that Plaintiff report for a third investigative interview on September 13, 2012. This interview would have a court reporter present and Plaintiff would be placed under oath. He demanded a third investigative interview on September 28, 2012 and October 9, 2012 as well.

57. On September 12, 2012, Defendant held "Just Ask EEO" on the topic of "Workplace Harassment" for the OFCCP managers.

58. On September 27, 2012, Plaintiff's attorney informed Defendant that "Going forward with the interview could reasonably be interpreted as an act of disability discrimination as well as retaliation for her engaging in prior protected activity."

59. On October 5, 2012, Plaintiff forwarded an email to OFCCP Deputy Director Leslie (Les) Jin that she sent to then Senator Mark Kirk about EEO harassment and retaliation she had been subjected to by Defendant on June 26, 2012. Deputy Director Jin was then the second highest ranking individual in OFCCP. Deputy Director Jin then forwarded the email to Regional Director Anderson. After the two directors spoke, Regional Director Anderson took no corrective action.

60. On October 22, 2012, Plaintiff received a "needs improvement" FY 2012 Annual Rating. Plaintiff received a "meets" rating for her work through May 25, 2012. The only period that this "needs improvement" covered was Plaintiff's performance from May 26, 2012 through the date she was placed on leave, June 29, 2012.

61. Defendant was required by the CBA to discuss any performance issues promptly. Defendant did not inform Plaintiff of "performance issues" until she received her Annual Rating. Assistant District Director Gordon discussed Plaintiff's review with Labor Relations before it was issued to Plaintiff. Defendant did not do this for any other employee.

62. On October 24, 2012, District Director Thomas demanded Plaintiff to review, answer, sign and notarize 100 questions he prepared.

63. On November 27, 2012, Plaintiff's attorney informed District Director Thomas that "…you have sent Ms. Silberman a list of over 100 questions which you have required her to answer…many of them appear to be less for the purpose of obtaining information for your investigation and more the purpose of harassing Ms. Silberman…".

7

64. On December 6, 2012, District Director Thomas's response states, "As a civil rights agency we take allegations of harassment very seriously." District Director Thomas in his deposition admitted that he did "nothing" regarding Plaintiff's complaints. (Thomas Dep. at 334).

65. On February 20, 2013, Plaintiff was informed she would receive a removal notice.

66. On February 20, 2013, Plaintiff contacted OFCCP Deputy Director Jin, OFCCP Director, Division of Management and Administrative Programs Patrice Rachel Torres and two USDOL attorneys stating that she was being forced under duress to resign from her position. Plaintiff never received a response from any of these individuals.

67. At his deposition, District Director Thomas admitted: that Plaintiff was not allowed to return to work before her resignation; the accommodation had not been implemented; Plaintiff had told him she had been subjected to a hostile work environment and conduct that was unwelcomed or offensive; no management investigation was conducted and Plaintiff could only deal with District Director Thomas or Assistant District Director Gordon while Plaintiff was on leave. (Thomas Dep. at 317-322). District Director Thomas stated in his deposition, "I would say that's a take it or leave it situation." (Thomas dep. at 322-323).

68. On February 22, 2013, Plaintiff was constructively discharged from her position.

**COUNT I - Violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et. seq.* and the Rehabilitation Act of 1973, 29 U.S.C. §701, et. seq.**

At all relevant times, there was in effect in the State of Illinois the Americans with Disabilities Act, 42 U.S.C. §12101, *et. seq.* (hereinafter "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. §701, *et. seq..*

During the course of employment, the Plaintiff was an "employee" as defined by the ADA and the Rehabilitation Act.

During the course of employment, the Defendant, USDOL, was an "employer" as that term is defined by the ADA and the Rehabilitation Act.

At all relevant times, the Plaintiff, was a qualified individual with a disability within the meaning of 42 U.S.C. §12101(2)(A), §12102(2)(B), and §12102(2)(C) based upon her previously described medical conditions.

8

At all relevant times, the Plaintiff had one or more impairments, as previously described, within the meaning of the ADA and Rehabilitation Act that substantially limited one or more of her major life activities.

The Plaintiff was regarded as having such impairment by the Defendant, USDOL.

At all relevant times, the Plaintiff was qualified to perform the essential functions of her job within the meaning of the ADA and the Rehabilitation Act.

While the Plaintiff was employed by the Defendant, USDOL, she satisfactorily performed her duties with the Defendant.

Pursuant to the ADA and the Rehabilitation Act, it is a civil rights violation for employers to fail to provide reasonable accommodations for employees with disabilities or discriminate on the basis of disability in all bases of employment, including discipline and this legislation applies to employees of the federal government.

In violation of the Americans with Disabilities Act and the Rehabilitation Act, the Defendant, USDOL, committed one or more of the following actions:

a. Failed to make reasonable accommodations to the Plaintiff in providing the accommodations requested by the Plaintiff's doctor's note which regarded the Plaintiff as disabled;

b. Failed to make any reasonable accommodation to the Plaintiff;

c. Failed to engage in a timely, good faith and meaningful exchange to determine an effective reasonable accommodation;

d. Disciplined the Plaintiff on the basis of her disability;

e. Terminated the Plaintiff on the basis of her disability;

f. Was otherwise in violation of the Americans with Disabilities Act.

9

As a result of the discriminatory and retaliatory conduct of the Defendant, USDOL, the Plaintiff has sustained the following and ongoing damages:

      a.      Loss of wages, benefits, and income from the time of her termination and ongoing;

      b.      Humiliation, embarrassment and emotional distress damages and ongoing;

      c.      Attorneys' fees and costs for the prosecution of this action and ongoing;

      d.      Prejudgment interest; and

      e.      other losses to be determined.

On December 18, 2019, the Plaintiff received a right to sue letter from the EEOC.

## COUNT II - Violation of Title VII of the Civil Rights Act of 1964

At all relevant times, there was in effect in the State of Illinois Title VII of the Civil Rights Act of 1964.

During the course of employment, the Plaintiff was an "employee" as defined by Title VII.

During the course of employment, the Defendant, USDOL, was an "employer" as that term is defined by Title VII.

During her employment, the Plaintiff made a complaint to the EEOC alleging national origin, race and religious discrimination and retaliation.

The Plaintiff's EEOC charge was highly contested and resolved on October 29, 2010 with the Plaintiff receiving a settlement.

The Defendant, USDOL, was aware of the Plaintiff bringing an EEOC charge.

While the Plaintiff was employed by the Defendant, USDOL, she satisfactorily performed her duties with the Defendant.

Pursuant to Title VII, an employer may not retaliate against an individual for making a failure to accommodate and retaliation claims.

In violation of Title VII, the Defendant, USDOL, retaliated against the Plaintiff for her complaint to the EEOC by giving her: a "partially meets" annual rating; subjecting her to a hostile work environment including an abusive and intimidating investigative interview; unjust scrutiny; repeated demands for investigative interviews and to answer over 100 questions intended to harass Plaintiff and not to get information; false allegations of misconduct; placement on an indefinite administrative leave; an unwarranted report to the ARDC and repeated failures to take corrective action regarding her EEO complaints.

As a result of the discriminatory conduct of the Defendant, USDOL, the Plaintiff has sustained the following and ongoing damages:

        a.      Loss of wages, benefits, and income and ongoing;

        b.      Humiliation, embarrassment and emotional distress damages and ongoing;

        c.      Attorneys' fees and costs for the prosecution of this action and ongoing;

        d.      Prejudgment interest; and

        e.      other losses to be determined.

On December 18, 2019, the Plaintiff received a right to sue letter from the EEOC.

## JURY DEMAND

A Jury Trial is requested on all claims triable by a jury.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Date of signing:     3/12/20

Signature of Plaintiff     *Jodi Silberman*

Printed Name of Plaintiff     Jodi Silberman